### Appeal of SCHULTZ.

(Circuit Court, E. D. Pennsylvania. June 21, 1899.)

#### No. 54.

CUSTOMS DUTIES—ACIDS—COAL-TAR PREPARATION.

A coal-tar preparation, not a color or dye, from which crystal carbolic acid is made by "refining," and which is employed in the manufacture of disinfectants and some kinds of soap, is admissible free from duty, as an acid, within Act Oct. 1, 1890, par. 473, which relates to "acids used for medicinal, chemical, or manufacturing purposes," and not dutiable under paragraph 19, which relates to "all preparations of coal tar, not colors or dyes, not specially provided for."

Ingham & Newitt, for petitioners.
James M. Beck, for the United States.

DALLAS, Circuit Judge. The government claims that the merchandise in question is a coal-tar preparation, not color or dye, not specially provided for, and the appellant claims that it is an acid used for mechanical, chemical, or manufacturing purposes, not specially provided for. It has been charged with duty under this provision of the act of October 1, 1890: "19. All preparations of coal tar not colors or dyes, not specially provided for in this act, twenty per centum ad valorem." The importer contends that it falls within the provision of the free list, as follows: "473. Acids used for medicinal, chemical, or manufacturing purposes, not specially provided for in this act." Unquestionably, this merchandise is a product of coal tar, not a color or dye; but it may nevertheless be an acid used for mechanical, chemical, or manufacturing purposes, and, if it be, it should have been classified as such. Matheson v. U. S., 18 C. C. A. 143, 71 Fed. 394. Whatever it may be, there can be no doubt respecting its use. The evidence conclusively shows that crystal carbolic acid is made from it, and whether the method by which this is accomplished be called a chemical or a manufacturing one is, under

the terms of the provision, immaterial. It certainly is one or the other, and perhaps may be said to be both. In addition to this use, which is its principal one, it is also employed to a not insignificant extent in the manufacture of disinfectants and of some kinds of soap. But the more serious question is, is it an acid? The single witness examined on behalf of the government says that it is not; the three chemists produced by the appellant say that it is. The weight of the evidence does not, however, depend solely upon which side has produced the greater number of witnesses, and I have felt it to be incumbent upon me to carefully examine and consider all the testimony. It appears that the government's expert is of opinion (1) that, speaking broadly and of the substance as an integral whole, it is not an acid; and also (2) that it is a composite liquid, which, although it potentially embodies an acid, comprises certain other constituents, which must be eliminated before a true acid is brought into existence.

1. As to the first of these propositions, he agrees that down to a quite recent time, which he is unable to fix with any definiteness, the identical article now involved was held by all chemists to be an acid; but he says that it could not in October, 1890, have been so regarded, because a certain discovery had then been made which disclosed that its classification as an acid had been erroneous. I do not think this evidence can be given controlling effect in the interpretation of the statute. It is not supported in any way, and the witness' assertion that the discovery referred to by him was generally known to chemists, and that the consequence which he ascribes to it was generally recognized by them, must, I think, in view of all the evidence, be regarded as a mistaken one. All of the chemists called by the appellant still pronounce this substance to be an acid; the trade so designates it to this day, and the literature of the science, so far as it has been produced, continues to treat of it as such. The preponderance of the evidence, therefore, is plainly to the effect that this merchandise, which for a long time was admittedly regarded as an acid by those competent to determine its nature, is not differently regarded now.

2. The word "acids," as it is used in the act of congress, is inclusive of crude, as well as of refined, acids. The witnesses on both sides speak of the conversion of the substance in question into crystal carbolic acid as being accomplished by "refining," and of the product as a refined carbolic acid. That the crude material contains about 12½ per centum of foreign substances (some of which are themselves acids) is of no consequence. Before, as well as after, refinement, the stuff is substantially an acid. The removal of undesirable elements is probably incident to every refining process, but the thing refined is not thereby transformed; it is merely purified. The decision of the board of general appraisers is reversed.